IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**VINCENT WILLIAMS,**

    **Movant,**

v.                                                                              Case No. 2:22-cv-00542
                                                                  Case No. 2:18-cr-00110-1

**UNITED STATES OF AMERICA,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Vincent Williams' *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (ECF No. 50), and a motion to dismiss contained in the United States' Response, (ECF No. 63). This case is assigned to the Honorable Irene C. Berger, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that the United States' request for dismissal, (ECF No. 63), be **GRANTED**; Williams's § 2255 Motion, (ECF No. 50) be **DENIED**; and this matter be **DISMISSED**, with prejudice, and **REMOVED** from the docket of the court. Given that the undersigned conclusively **FINDS** that Williams is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970).

I.      **<u>Relevant History</u>**

Williams is an inmate currently incarcerated at Federal Correctional Institution ("FCI") Fort Dix in New Jersey. *See* Federal Bureau of Prisons, Inmate Locator, www.bop.gov/inmateloc/. In 2017, Metropolitan Drug Enforcement Network Team investigators used a confidential informant ("CI") to conduct two controlled buys of methamphetamine from Williams. (ECF No. 63 at 2). The CI made audio recordings during the controlled buys, and those recordings were then used to obtain a search warrant for Williams's apartment, where law enforcement officers found a large quantity of methamphetamine and a loaded firearm. (ECF Nos. 60 at 14, 63 at 2). On May 24, 2018, Williams was charged by federal indictment with two counts of distribution of five grams or more of methamphetamine and one count of possession with intent to distribute fifty or more grams of methamphetamine, all violations of 21 U.S.C. § 841(a)(1). (ECF No. 1). Wesley P. Page ("Page"), Federal Public Defender for the Southern District of West Virginia, was appointed to represent Williams upon his arrest in May 2021. In June 2021, the United States advised Page that it intended to seek a superseding indictment against Williams, adding a charge under 18 U.S.C. § 924(c) for the firearm found in his apartment, unless Williams entered into a plea agreement resolving the drug trafficking charges. (ECF Nos. 62-2 at 7, 62-4 at 2).

On July 15, 2021, Williams signed a plea agreement, and six days later, he pled guilty to one count of distribution of five grams or more of methamphetamine. (ECF Nos. 34, 46 at 1). The Court calculated Williams's base offense level under the United States Sentencing Guidelines ("Guidelines") as 36 and applied a two-level increase for possessing a dangerous weapon in connection with the offense; a two-level increase for maintaining a premises for the purpose of distributing controlled substances; and a three-

level decrease for acceptance of responsibility. (ECF No. 59 at 23–24). Williams's initial Guidelines range was 235–293 months' imprisonment, if the methamphetamine were treated as ice.[1] (ECF No. 59 at 44). However, the Court chose not to apply the ice guideline, recognizing that most methamphetamine was high-purity and that higher-purity methamphetamine no longer implied greater culpability. (ECF No. 59 at 44). When disregarding the ice guideline, Williams's Guidelines range decreased to 151–188 months' imprisonment. (*Id.* at 31). The Court considered the other sentencing factors, varied downward, and sentenced Williams to 120 months' imprisonment followed by a 4-year term of supervised release. (ECF Nos. 46 at 2–3, 59 at 40–41). Williams did not appeal his conviction or sentence, but filed the instant § 2255 Motion on November 22, 2022. (ECF No. 50 at 12).

In his motion, Williams alleges ineffective assistance of counsel. (*Id.* at 4–5). He claims that Page failed to: (1) communicate with him regarding the decision to plead guilty rather than proceed to trial; (2) conduct an adequate investigation; (3) attempt to negotiate a more favorable plea agreement; (4) discuss the Presentence Report ("PSR") with him; and (5) file substantive objections to the PSR. (*Id.*). In a memorandum of law, Williams further alleges that his counsel should have moved to suppress evidence stemming from the audio recordings of the controlled buys because, according to Williams, the recordings constituted "illegally introduced wiretaps." (ECF No. 60 at 15). Williams also argues that his sentence was improperly enhanced pursuant to 21 U.S.C. § 851, that counsel failed to seek a downward variance from the Guidelines, and that

---

[1] Ice is a methamphetamine mixture of at least 80% purity, and ice has a 10:1 quantity ratio with lower-purity methamphetamine mixtures (2 grams of ice is treated the same as 20 grams of methamphetamine mixture) that results in significantly higher offense levels for convictions involving ice. U.S.S.G. 2D1.1(c); *see United States v. Moreno*, 583 F. Supp. 3d 739, 742 (W.D. Va. 2019) (explaining the ice guidelines).

3

counsel failed to object to his sentence as substantively unreasonable. (*Id*. at 26-29.).

Page was ordered to respond to Williams's allegations by affidavit, and did so on January 9, 2023. (ECF No. 62). Alongside his affidavit, Page attached a time sheet, which sets forth his contacts with Williams and reflects the dates and amounts of time spent in consultation with him, (ECF No. 62-1); a letter from Page to Williams explaining the charges against him, potential sentences, and possible defenses, (ECF No. 62-2); a letter from Page to Williams regarding the discovery in his case, (ECF No. 62-3); and several email exchanges between Page and the prosecuting Assistant United States Attorney ("AUSA") discussing a plea deal, (ECF Nos. 62-4, 62-5, 62-6, 62-7). Upon receipt of the affidavit, the United States filed a Response, moving to dismiss the § 2255 motion and arguing that Williams has not adequately demonstrated ineffective assistance of counsel. (ECF No. 63). Williams filed a Reply, reasserting the claims made in his original motion. (ECF No. 67).

## II.   **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States, the court imposing the sentence lacked jurisdiction, the sentence exceeded the maximum authorized by law, or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence." *Merritt v. United States*, 499 F. Supp. 3d 249, 254 (E.D. Va. 2020) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)).

Pursuant to the Rules Governing Section 2255 Proceedings for the United States

District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery and direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a).

The decision of whether to conduct an evidentiary hearing is generally left to the sound discretion of the district court, although there remains "a category of petitions, usually involving credibility, that will require an evidentiary hearing in open court." *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970); *see also United States v. Hall*, 771 F. App'x 226, 227 (4th Cir. 2019); *United States v. Runyon*, 994 F.3d 192, 208 (4th Cir. 2021); *United States v. Velascu,* 429 F. App'x. 236, 237 (4th Cir. 2011). This is particularly true when "competing sworn statements offer differing factual allegations that 'relate primarily to purported occurrences outside of the courtroom and upon which the record could, therefore, cast no real light.'" *United States v. Underwood,* No. 20-6782, 2022 WL 186054, at *1, n.2 (4th Cir., Jan. 20, 2022) (quoting *United States v. White,* 366 F.3d 291, 302 (4th Cir. 2004)). Nonetheless, the mere presence of conflicting affidavits does not automatically require an evidentiary hearing. When the motions, files, and records in the case conclusively show that the movant is not entitled to relief, the Court may deny the § 2255 motion without an evidentiary hearing. *Raines,* 423 F.2d at 529. Furthermore, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

## III. <u>Discussion</u>

Williams argues in his Motion to Vacate that his trial counsel was ineffective. (ECF No. 50). The Sixth Amendment to the United States Constitution guarantees every criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 680 (1984). When a defendant alleges ineffective assistance of counsel as a ground for relief, the defendant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686. Under *Strickland*, the test for ineffective assistance of counsel has two prongs: a criminal defendant must show that his counsel's performance was deficient, and that this deficiency prejudiced his defense. *Id.* at 687. The burden rests on the defendant to satisfy both prongs, and "a failure of proof on either prong ends the matter." *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 1994).

To establish deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Thus, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The inquiry under *Strickland* is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

To demonstrate prejudice, the defendant must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed … by the Sixth Amendment." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 687). It is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland*, 466 U.S. at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Further, the defendant must show that the result of the proceeding was fundamentally unfair or unreliable. *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998), *citing Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

When a criminal defendant has entered a guilty plea, the analysis on collateral review focuses heavily on the Rule 11 colloquy, because by entering a guilty plea, the defendant "has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Therefore, a guilty plea "represents a break in the chain of events which has preceded it in the criminal process." *Id*. Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster*, 403 F.3d 216, 221-222 (4th Cir. 2005). As the Fourth Circuit explained:

> [A] defendant's solemn declarations in open court … carry a strong presumption of verity … because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. … Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary

7

>hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Id.* Consequently, a criminal defendant is precluded from raising alleged constitutional deprivations that occurred prior to pleading guilty and "may only attack the voluntary and intelligent character of the guilty plea" by demonstrating that her counsel's performance was inadequate under the Sixth Amendment. *Tollett*, 411 U.S. at 267; *see also Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1296 (4th Cir. 1992) ("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."). In other words, the movant under § 2255 must not only rebut the presumption that counsel performed within the wide range of reasonable professional competence, but he must also demonstrate that "there is a reasonable probability that, but for counsel's errors, [movant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Williams makes several claims against his trial counsel, both pre-plea and at sentencing. First, Williams alleges that Page failed to adequately communicate with him and explain the consequences of pleading guilty or proceeding to trial. (ECF Nos. 50 at 4, 60 at 12). This allegation is rebutted by Williams's own statements at his plea hearing, by Page's letter to Williams, and by Page's affidavit. At his plea hearing, Williams stated he was fully satisfied with the legal representation by his counsel, that they had had adequate time to discuss the case, and that Page answered his questions about how to best proceed. (ECF No. 58 at 4–5). These statements made under oath are deemed binding absent clear and convincing evidence to the contrary. *Bryant v. United States*, No. 5:05-CR-237-V, 2008 WL 2705486, at *3 (W.D.N.C., July 9, 2008), *citing Fields v. Attorney Gen. of Md.*,

8

956 F.2d 1290, 1299 (4th Cir.1992). The undersigned *does* find the evidence before the Court to be clear and convincing, but not in favor of Williams.

The record shows that Page met with Williams in person at the South Central Regional Jail on five separate occasions for over nine hours total to discuss his case, review discovery, inform him of the charges he was facing, the potential consequences of pleading guilty or going to trial, and to negotiate a plea. (ECF No. 62 at 4). Page sent a letter to Williams that clearly and comprehensively explained the charges Williams was facing, an overview of federal sentencing, potential sentencing ranges, and the prospect of a plea bargain. (ECF No. 62-2). Page's affidavit and letter to Williams, in addition to Williams's own statements at his plea hearing, show that Page adequately communicated with Williams and explained his case to him.

In a related criticism, Williams states that Page misrepresented material facts and "affirmatively misadvised" him. (ECF No. 60 at 23–24). But Williams provides no further details on any alleged misrepresentations, (*see id.*), so this allegation must be rejected for lack of factual support. Williams also states that he was never advised of the minimum and maximum sentences applicable to his case. (ECF No. 67 at 2). However, his potential sentencing ranges were provided at least twice in writing: in the letter he received from Page, (ECF No. 62-2), and in his plea agreement. (ECF No. 34). Williams also acknowledged at his plea hearing that his conviction carried a statutory minimum of five years and a maximum of forty years, and that his sentence might ultimately differ from his attorney's estimates. (ECF No. 58 at 15–16, 20). In sum, Page's communications and discussions with Williams, the information provided in the plea agreement, and the additional information supplied by the Court at the plea hearing were constitutionally adequate, such that Williams's plea was knowing and voluntary. *See United States v.*

9

*Lambey,* 974 F.2d 1389, 1395-96 (4th Cir. 1992) (holding information provided by the court during the Rule 11 colloquy may clarify earlier information provided by counsel and may be relied upon in finding a guilty plea to be voluntary and intelligent).

The remainder of Williams's allegations of ineffective assistance related to his counsel's pretrial performance (Page's alleged failure to investigate, failure to file substantive pretrial motions, and failure to negotiate a more favorable plea agreement) are waived by his plea agreement, because they do not implicate the voluntariness of his plea. *See United States v. Campa-Macias*, 358 Fed. Appx. 400, 401 (4th Cir. 2009) (recognizing that a valid guilty plea waives all prior non-jurisdictional defects, including the denial of a motion to suppress). But even if these allegations were not foreclosed by the plea agreement, Page's performance in each of these areas was constitutionally adequate and within professional norms, as discussed below.

Williams claims that Page failed to adequately investigate the case. (ECF No. 50 at 4). Failure to investigate may constitute ineffective assistance of counsel, as "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Williams states that Page failed to research case law, interview witnesses, or conduct any independent investigation. (ECF No. 60 at 17). Page states in his affidavit that the case against Williams was straightforward, making further investigation unnecessary. (ECF No. 62 at 6). Nonetheless, Page did investigate the facts of Williams's case by asking questions of the AUSA, interviewing the suspected CI, and investigating a potential witness. (*Id.* at 7). Page's timesheet also reflects sufficient time spent performing legal and factual research on Williams's case. (*See* ECF No. 62-1). Williams does not mention any specific investigative steps he believes Page failed to take anywhere in his Motion or

10

Memorandum of Law.[2] (*See* ECF Nos. 50, 60). Nor does Williams offer any facts or evidence that Page would have uncovered through additional investigation. *See United States v. Weakley*, No. 3:14CR00029, 2017 WL 6345900, at *3 (W.D. Va., Dec. 11, 2017) (rejecting ineffective assistance claim as general and conclusory where movant failed to explain what evidence would have been uncovered with further investigation). The lack of specificity in Williams's allegations, coupled with Page's affidavit detailing his investigation, render Williams' claim meritless.

Third, Williams claims Page failed to file substantive pretrial motions. (ECF No. 60 at 13–14). Specifically, Williams argues that Page should have moved to suppress evidence recovered from the search of Williams's apartment. (ECF No. 60 at 14). Williams claims the search warrant was invalid because it was obtained using information from illegal audio recordings of the controlled buys. (*Id.*). When a movant claims ineffective assistance based on failure to file a motion to suppress, the court must first determine whether the unfiled motion would have had "some substance." *United States v. Pressley*, 990 F.3d 383, 388 (4th Cir. 2021). This unfiled motion to suppress clearly would have been frivolous, because the audio recordings were legal. The Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510–2523, which Williams cites in his memoranda, (ECF No. 60 at 14), specifically provides that law enforcement may record conversations involving consenting informants. 18 U.S.C. § 2511 (c) ("It shall not be

---

[2] In his reply, Williams mentions one specific investigative step he alleges Page should have taken: obtaining transcripts from the grand jury proceedings. (ECF No. 67 at 3). However, because this contention is only raised in Williams's reply, the undersigned will not consider it. *See Faulcon v. United States*, No. 14CV433, 2016 WL 8290118, at *4 n.4 (E.D. Va., Jan. 6, 2016) ("Petitioner may not raise new arguments in a reply brief to which the Government has had no opportunity to respond."); *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 512 n.8 (D. Md. 2009) ("Courts have broad discretion to decline to consider arguments or issues first raised in a reply brief."). Neither Page, nor the Government had the opportunity to respond to this new claim, and Williams fails to explain how having the transcript would have changed the outcome in his case.

11

unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where … one of the parties to the communication has given prior consent to such interception"); *see also United States v. Blevins*, 315 Fed. Appx. 478, 480 (4th Cir. 2009) ("[F]ederal statutory and constitutional law permits officials to place an electronic surveillance device on a consenting informant for the purpose of recording communications with a third-party suspect, even in the absence of a warrant."). It was appropriate for Page not to file this meritless motion to suppress the recordings. *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) ("Counsel is not required to engage in the filing of futile motions.").

Page indicates in his affidavit that there may have been non-frivolous grounds to move to suppress some evidence, but, because proceeding to trial would have exposed Williams to an additional charge under 18 U.S.C. § 924(c) and a minimum 15-year sentence, no motion to suppress was filed. (ECF No. 62 at 6). The affidavit does not specify those non-frivolous grounds or the evidence that might have been suppressed, but Page states that the likelihood of obtaining a better result than the final plea deal was slim. (*Id.*). Even where a motion to suppress might have been successful, trial counsel may make the reasonable strategic decision not to file a motion to suppress to avoid additional charges. *See Morris v. United States*, No. CIV.A.2:06-CV-00938, 2008 WL 4763223, at *5 (S.D.W. Va., Oct. 27, 2008). Counsel has "wide latitude" in making such tactical decisions. *Id.*, *citing Strickland*, 466 U.S. at 688–89. Considering the plea offer and looming superseding indictment, Page's decision not to move to suppress some evidence was reasonable and did not constitute ineffective assistance of counsel.

Fourth, Williams claims that Page failed to negotiate a more favorable plea agreement, stating "the government's Plea Agreement was skewed in favor of the

12

government and did not have any benefit for Williams." (ECF Nos. 50 at 4, 60 at 20, 23). This allegation is conclusory and entirely meritless. Page negotiated a very favorable plea agreement for Williams; the agreement dismissed two of the three counts against him and avoided a superseding indictment under § 924(c). (ECF Nos. 34 at 2, 62-4 at 2). Williams makes no suggestion that Page fumbled another existing plea agreement or made some tangible error. Williams is merely dissatisfied with his sentence, which does not amount to ineffective assistance. *See Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) (explaining that counsel is not constitutionally ineffective simply because a petitioner believes he "could have gotten a better deal"). Frankly, his displeasure is baffling. Considering the Guidelines range to which he was exposed—151 to 188 months' imprisonment—a sentence of 120 months' imprisonment can only be described as favorable.

Williams has not established his counsel's pretrial performance was deficient, nor can he establish prejudice from those alleged deficiencies. In the context of guilty pleas, prejudice requires a showing that there is a reasonable probability that the defendant would not have pled guilty and would have proceeded to trial but for counsel's errors. *Hill*, 474 U.S. at 59. The defendant must also show that the decision to go to trial would have been rational under the circumstances. *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Williams believes that, had he been properly advised, he would have chosen to go to trial so he could "prove that the government [had] nothing but bogus wiretaps." (ECF No. 60 at 23). In reality, it is highly unlikely that Williams would have proceeded to trial. Proceeding to trial would have exposed Williams to the other two counts which were dismissed as part of the plea agreement, as well as a superseding indictment for violating 18 U.S.C. § 924(c), and a conviction at trial on all four of those charges would have

resulted in a minimum sentence of 15 years' imprisonment. (ECF Nos. 62 at 6, 63 at 7). The United States had strong evidence to support the charges against Williams, including the controlled buys and the evidence seized from Williams' apartment pursuant to the search warrant: large quantities of methamphetamine, $13,600 in cash, various drug paraphernalia, and a loaded firearm. (ECF Nos. 59 at 27, 36; 63 at 2,). Page saw no meritorious defenses to raise at trial, (ECF No. 62 at 8), and Williams offers nothing to suggest that he might have succeeded in securing an acquittal. It would have been objectively unreasonable for Williams to risk a greater mandatory minimum sentence with no apparent chance of success. Williams has not shown he was prejudiced by any of his counsel's alleged pre-plea errors.

Williams's remaining allegations of ineffective assistance relate to his counsel's performance at sentencing. First, Williams claims that Page failed to properly discuss and explain the PSR. (ECF No. 50 at 5). This allegation is rebutted by Williams's statements at the sentencing hearing, during which he stated that he had discussed the PSR and its addendum with his attorney and that he was completely satisfied with his representation. (ECF No. 59 at 3); *see Good v. United States,* No. 2:16CR22, 2018 WL 2976984, at *8 (E.D. Va., June 12, 2018) ("Petitioner's post hoc attempt to deny the facts that he swore to under oath is not sufficient to create a genuine factual issue as to whether he adequately discussed the PSR with counsel."). Williams makes several other allegations that can be rejected as plainly false: Williams claims that Page failed to move for a downward variance and failed to object to findings in the PSR, and he claims Page failed to object to an improper sentencing enhancement under 21 U.S.C. § 851. (ECF No. 60 at 25– 29). Page did in fact move for a downward variance and object to the PSR's application of a 2-level premises enhancement, (ECF Nos. 43, 58), and nothing in the record shows that Williams

received a sentencing enhancement under 21 U.S.C. § 851. (*see* ECF Nos. 49, 59).[3]

Finally, Williams claims his counsel failed to object to his sentence as substantively unreasonable. (ECF No. 60 at 2). A sentence is substantively unreasonable if it is longer than necessary to serve the purposes of sentencing. *United States v. Fowler*, 948 F.3d 663, 668 (4th Cir. 2020). In his affidavit, Page states that the Court's sentence was a significant downward variance from the initial guideline range and the fact that Williams had requested an even lower sentence was not sufficient reason to object. (*Id.* at 12). Though Williams's sentence was ultimately greater than the statutory minimum of five years and greater than the 90 months he requested in his sentencing memorandum (ECF No. 43 at 1), the Court issued a sentence much closer to the 90 months requested by Williams than the 235–293 months requested by the United States. (ECF No. 42 at 1). An objection to such a generous sentence would have been futile, and Page acted reasonably in not filing one.

Williams also argues his sentence represents an unwarranted disparity when compared to other sentences issued in similar cases, and he claims his counsel should have raised this disparity in a motion for a sentence reduction. (ECF No. 60 at 28). He cites to the case of a defendant sentenced by this Court, who pled guilty to possession with intent to distribute methamphetamine and unlawful transport of a firearm, who received a sentence of 72 months. (*Id.*). However, Page brought that same case to the Court's

---

[3] Williams may be taking issue with the fact that his counsel did not object to the PSR's treatment of $13,600 found in Williams' apartment as drug proceeds; Williams raised this objection and argued it himself at his sentencing hearing. (*See* ECF No. 59 at 3–4, 16–20). The fact that Williams ultimately argued the PSR objection himself to the Court means he likely was not prejudiced by its exclusion from the sentencing memorandum. However, Williams does not state anywhere in his motion that his counsel failed to make this specific objection to the PSR; rather, he states that Page failed to make any objections to the PSR, an allegation which is clearly unfounded. While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), a court may not construct a party's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993), so the undersigned will not consider an allegation that Williams did not raise.

attention at sentencing when arguing that a 90-month sentence would avoid unwarranted disparities, (ECF No. 59 at 31), and it would have been pointless to cite the same case again after sentencing. Page's performance at sentencing was constitutionally effective assistance. Moreover, Williams cannot establish prejudice with respect to Page's performance at sentencing. To demonstrate prejudice from counsel's errors at sentencing, a movant must show that his sentence would have been more lenient if not for the alleged errors. *Royal v. Taylor*, 188 F.3d 239, 248–49 (4th Cir. 1999). Williams has made no such showing. Although Williams may believe he deserved a lesser sentence, that belief, without more, cannot sustain a § 2255 motion. Therefore, the undersigned **FINDS** that Williams's claims are meritless and should be dismissed.

### IV.     Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings proposed herein and **RECOMMENDS** that the United States' request for dismissal, (ECF No. 63), be **GRANTED**; Williams's § 2255 Motion, (ECF No. 50), be **DENIED**; and this matter be **DISMISSED**, with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such

objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**:  June 28, 2023

Cheryl A. Eifert
United States Magistrate Judge